**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| KARIN SHEIBEL | : | CIVIL ACTION |
| 916 Cross Street | : | |
| Philadelphia, PA 19147 | : | |
| Plaintiff, | : | NO. |
| -vs- | : | |
|  | : | |
| PHILADELPHIA FIGHT | : | PLAINTIFF REQUESTS |
| 1800 Lombard Street | : | TRIAL BY JURY |
| Suite 505, 1 Graduate Plaza | : | |
| Philadelphia, PA 19146 | : | |
| and | : | |
| JANE SHULL (*individually*) | : | |
| and | : | |
| AKIA FEGGANS (*individually*) | : | |
| and | : | |
| TINA PRESBERY (*individually*) | : | |
| and | : | |
| JENNIFER JONES (*individually*) | : | |
| and | : | |
| BARRY ROBINSON (*individually*) | : | |
|  | : | |
| Defendants. | : | |

Plaintiff, Karin Scheibel, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants, Philadelphia Fight, Jane Shull, Akia Feggans, Tina Presbery Jennifer Jones, and Barry Robinson (collectively "Defendants") and upon information and belief avers the following:

## PARTIES

1.      Plaintiff, Karin Scheibel ("Plaintiff" or "Ms. Scheibel") is an adult individual who resides in the Commonwealth of Pennsylvania with an address for the purposes of service at 916 Cross Street, Philadelphia, Pennsylvania, 19147.

2.      Defendant, Philadelphia Fight is a business organization existing under the laws of the Commonwealth of Pennsylvania with an address for the purposes of service at 1800 Lombard Street, Suite 505, 1 Graduate Plaza, Philadelphia, Pennsylvania 19146.

3.      Defendant, Jane Shull is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 1233 Locust Street, Philadelphia, Pennsylvania 19108.

4.      At all times relevant to this Civil Action, Defendant Jane Shull was an employee of Defendant, Philadelphia Fight and held the position of Chief Executive Officer ("CEO") and was therefore a supervisor of Plaintiff, Karin Scheibel.

5.      Defendant, Akia Feggans is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 1233 Locust Street, Philadelphia, Pennsylvania 19108.

6.      At all times relevant to this Civil Action, Defendant Akia Feggans was an employee of Defendant, Philadelphia Fight and held the position of Clinical Supervisor and was therefore a supervisor of Plaintiff, Karin Scheibel.

7.      Defendant, Tina Presbery is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 1233 Locust Street, Philadelphia, Pennsylvania 19108.

8.      At all times relevant to this Civil Action, Defendant Tina Presbery was an employee of Defendant, Philadelphia Fight and held the position of Drug and Alcohol Counselor.  Defendant, Tina Presbery was empowered by Defendant, Akia Feggans to act in a supervisory capacity and was therefore a supervisor of Plaintiff, Karin Scheibel.

9.      Defendant, Jennifer Jones is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 1233 Locust Street, Philadelphia, Pennsylvania 19108.

10.      At all times relevant to this Civil Action, Defendant Jennifer Jones was an employee of Defendant, Philadelphia Fight and held the position of Director of the Mental Health Counseling Program and was therefore a supervisor of Plaintiff, Karin Scheibel.

11.      Defendant, Barry Robinson is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 1233 Locust Street, Philadelphia, Pennsylvania 19108.

12.      At all times relevant to this Civil Action, Defendant Barry Robinson was an employee of Defendant, Philadelphia Fight and held the position of Director of Human Resources and was therefore a supervisor of Plaintiff, Karin Scheibel.

## NATURE OF THE CASE

6.      Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")); 42 U.S.C. § 1981; the American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq* ("ADA"); the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"); under the laws of the Commonwealth of Pennsylvania; and under the Philadelphia Fair Practices Ordinance, § 9-1100 *et. seq.* ("PFPO"), and seeks damages to redress injuries Plaintiff suffered as a result of discrimination and retaliation with ultimately led to the termination of Plaintiff's employment with Defendants.

## JURISDICTION AND VENUE

7.      This action involves a Question of Federal Law under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the American with Disabilities Act of 1990.

8.      The honorable Court also has supplemental jurisdiction over the Commonwealth Law and Municipal Causes of Action.

9.      Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in Philadelphia County where the discrimination complained of occurred.

10.     On or about December 29, 2017, Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.  Plaintiff's Charge of Discrimination was then cross-filed at the Pennsylvania Human Relations Commission.

11.     On or about August 10, 2018, the EEOC issued Plaintiff a Dismissal and Notice of Rights.

12.     This action is commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

## MATERIAL FACTS

13.     Plaintiff seeks damages for injuries caused as a result of Defendants' discrimination of Plaintiff based on Plaintiff's race and color, discrimination based on Plaintiff's disability and/or perceived disability as defined by the American Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"), and as a result of Defendants' retaliation against Plaintiff for reporting said discrimination in the workplace.

14.     At all times material Plaintiff was a disabled, white, Caucasian female and recovering addict.  At all times relevant to this Civil Action Plaintiff, Karin Scheibel maintained

her sobriety.  In fact, Plaintiff has remained in recovery for more than eleven (11) years.  Plaintiff has also been diagnosed with epilepsy.

15.      Defendant, Philadelphia Fight provides comprehensive healthcare to people living with HIV and/or AIDS, as well as individuals at risk of contracting HIV and/or AIDS.  Therefore, Defendant, Philadelphia Fight works with individuals dealing with issues related to drugs and alcohol.  Accordingly, Plaintiff, Karin Scheibel's status as a recovering addict provides Plaintiff with insight when working with patients dealing with addiction and addiction related issues.

16.      At all times material to this Civil Action, Plaintiff, Karin Scheibel was employed by Defendant, Philadelphia Fight as a Drug and Alcohol Counselor.

17.      In March 2014, Plaintiff interviewed for a position as Drug and Alcohol Counselor at Defendant, Philadelphia Fight's Lombard Street Office.  Plaintiff interviewed with the former Director of Behavioral Health Services, Nancy Roth and the former Clinical Director of Intensive Outpatient Substance Abuse Program, Carolyn Zugschwert.  Both Nancy Roth and Carolyn Zugschwert are white, Caucasian females.  Plaintiff also interviewed with Defendant, Jennifer Jones who is an African American female.

18.      During the interviews, Plaintiff expressed her desire to work with addicts as Plaintiff herself was a recovering addict.  At that time Plaintiff had eight (8) years in recovery.  Nancy Roth identified with Plaintiff and explained that she too was part of a "12-step fellowship" and considers herself to be in recovery.

19.      When Ms. Scheibel first began her employment for Defendant, Philadelphia Fight, there were two (2) supervisors directly above Plaintiff: Carolyn Zugschwert and Jennifer Jones.  Carolyn Zugschwert was the Director on the Substance Abuse side, and Jennifer Jones was the Director on the Mental Health side.  Then, Nancy Roth was the supervisor directly above Carolyn

Zugschwert and Jennifer Jones.   Eventually, Defendant, Akia Feggans would assume responsibility for all three (3) of these positions.

20.     In May 2014, Defendant Akia Feggans was hired by Defendant, Philadelphia Fight as a Temporary Clinical Director at the Lombard Street Office.  By this time, nearly all of Ms. Scheibel's co-workers were aware of Ms. Scheibel's status as a recovering addict as this often-helped Ms. Scheibel develop successful therapeutic approaches with her patients.

21.     About one (1) year later, Defendant, Akia Feggans was promoted to Clinical Supervisor of the Mental Health Counseling Program, replacing, Defendant, Jennifer Jones.

22.     About four (4) months after replacing Defendant, Jennifer Jones, Defendant Akia Feggans was promoted again to Director of Behavioral Health Programs, replacing Nancy Roth.

23.     Pursuant to Defendant, Akia Feggans second promotion, she became the sole supervisor of Defendant, Philadelphia Fight's Lombard Street Office.  Under Defendant, Akia Feggans' leadership, the Lombard Street office became a toxic environment, as Defendant, Akia Feggans openly voiced her discriminatory views based on sexual orientation, gender, race, religion, color, national origin, and against individuals with disabilities.  Because Defendant, Akia Feggans openly condoned hate-based-discrimination, Plaintiff's co-workers at the Lombard Street office were empowered to follow along.

24.     Immediately upon assuming the top position of the Lombard Street office, Defendant, Akia Feggans commenced a campaign of discrimination against Ms. Scheibel based on Ms. Scheibel's disabilities, race and color, and in retaliation for Ms. Scheibel's continued reports of Defendants unlawful discriminatory and harassing conduct.  This discrimination and harassment was severe and pervasive and continued throughout the duration of Ms. Scheibel's employment until Ms. Scheibel's unlawful termination in November 2017.

25.     Defendant Akia Feggans expressed and condoned race-based comments directed at white, Caucasian employees of Defendant, Philadelphia Fight.  For example, Defendant, Akia Feggans referred to Nancy Roth, as a "racist who thinks she is the great white hope."  It was partly due to Defendant, Akia Feggans discriminatory, hate-based comments and conduct, and her condoning the same from the African American staff, that certain white, Caucasian employees made the decision to leave Philadelphia Fight.

26.     Sometime around August 2015, Cheryl Delaney wrote a letter to CEO, Defendant, Jane Shull, informing Defendant, Jane Shull that she could no longer work at Philadelphia Fight due to Defendant, Akia Feggans discrimination against white, Caucasian employees.  Co-worker, Cheryl Delaney reports that Defendant, Akia Feggans created a hostile work environment.

27.     After Cheryl Delaney left Philadelphia Fight because of the hostile work environment created by Defendant, Akia Feggans, Defendant, Akia Feggans informed employees including Plaintiff that Defendant, Jane Shull showed Defendant, Akia Feggans the letter that Cheryl Delaney wrote.  Defendant, Akia Feggans warned all present that "Cheryl Delaney is gone and I am still here."  Defendant, Akia Feggans informed all present that she had Defendant, Jane Shull wrapped around her finger and that despite Cheryl Delaney's accusations, no discipline resulted.  This was indicative of Defendants' response to reports of discrimination and retaliation in the workplace.  No meaningful investigation was performed.  No corrective action was taken. Defendants used reports of discrimination in the workplace to warn other employees what would happen if they attempted to engage in similar protected activity.  This empowered and emboldened Defendants to continue the campaign of hate and intolerance based on race, color, gender, sexual preference, national origin, and individuals' disabilities.

28.     Co-worker and employee for Defendants, Allen Howell said something to the effect of, "look at the crackers, they think they can dance."  Allen Howell felt comfortable voicing these

inappropriate discriminatory ideas because Defendant, Akia Feggans condoned discrimination and harassment in the workplace.

29.     Defendant, Tina Presbery called a patient and client of Philadelphia Fight a "bitch" in front of multiple witnesses.  In fact a nearby crossing guard had to intervene and break-up the confrontation because Defendant, Tiny Presbery's behavior was so violent and aggressive.

30.     Defendant, Tina Presbery called another patient and client of Philadelphia Fight a "crackhead."  This is indicative of discrimination against individuals dealing with addiction issues.

31.     Defendants, Akia Feggans and Tina Presbery constantly referred to white women as "white-girl."  The term "white-girl" was used on a daily basis by Defendants, Akia Feggans and Tina Presbery; particularly when referring to white, Caucasian patients and clients of Philadelphia Fight.

32.     Defendant, Tina Presbery announced that white people, including employee Kristen Maurer, "like to play the poor little white girl victim."

33.     When African American people displayed feelings of empathy, sensitivity, or identified with white, Caucasian people in any way, Defendant, Akia Feggans would openly denounce them.  Defendant, Akia Feggans called these African American people "coons." Defendant, Akia Feggans also called these African American people "uncle toms."  On one occasion Defendant, Akia Feggans used the term "house-nigger" to refer to an African American person who failed to identify with the discriminatory and hate-based ideas that Defendant, Akia Feggans voiced and condoned on a daily basis.

34.     Defendant, Akia Feggans often used the word "coons" to describe African Americans who identified with white, Caucasian people.

35.     Defendant, Akia Feggans called Dena Salley an "uncle Tom" because Dena Salley reported to Jane Shull that Defendant, Akia Feggans was bullying Carolyn Zugschwert, a white woman with whom Deena Salley was friendly with.

36.     Defendant, Akia Feggans stereotyped older white, Caucasian women who cut their hair, stating, "I guess all white women cut their hair when they get older."

37.     Defendant, Akia Feggans is a graduate of University of Pennsylvania.  Defendant, Akia Feggans repeatedly made comments about having to go to school with "white privilege."  In fact, white privilege was an ongoing theme for Defendant, Akia Feggans.

38.     Defendants, Akia Feggans and Tina Presbery spent a great deal of time discussing their discriminatory, race and color-based ideas with regard to co-workers, employees, patients, and clients of Philadelphia Fight.   Defendants Akia Feggans and Tina Presbery made comments about light-skinned African American people, stating, "light skin black girls think they are better than dark skin black girls."

39.     Defendants, Akia Feggans and Tina Presbery also made race-based comments directed at African American people.  When a patient and client of Philadelphia Fight reported feelings of inquietude to Defendant, Barry Robinson, Defendant, Barry Robinson informed Defendants, Akia Feggans and/or Tina Presbery.  Pursuantly, Defendants, Akia Feggans and Tina Presbery held a conversation where they discussed the following: "that black guy thinks he is better than us.  He probably doesn't even work on Wall Street.  He is probably just a janitor."

40.     Defendants, Akia Feggans and Tina Presbery did not limit their hate-based ideas to discrimination based only on color and race.  Defendants, Akia Feggans and Tina Presbery constantly expressed discriminatory ideas based on race, color, religion, national origin, disabilities, gender, and sexual orientation.

41.     Defendants, Akia Feggans and Tina Presbery constantly referred to patients and clients of Philadelphia Fight, who were dealing with issues related emotional distress or mental illness as "crazy," or "nuts."

41.     Defendants, Akia Feggans and Tina Presbery often called transgender patients and clients of Philadelphia Fight, "it."

42.     Defendant, Tina Presbery spoke in a degrading and abusive way about gay and transgender patients and clients of Philadelphia Fight.  Defendant, Tina Presbery stated, "I don't care if that bitch puts on a wig and stuffs her bra, she is not a real woman.  I have a pussy so I am a real woman."

43.     Defendant, Tina Presbery announced that it is wrong for transgender women to use a women's restroom.  This comment was made on multiple occasions.

44.     Defendants, Akia Feggans and Tina Presbery had conversations about a Therapist and employee of Philadelphia Fight who is gay, expressing their concerns that he was attempting to turn his group gay.

45.     Many Philadelphia Fight employees reported race and color discrimination to the Human Resources Department, however at no time did Defendants conduct a meaningful investigation.  No corrective action was  taken and the atmosphere of discrimination, abuse, and harassment continued.  In fact, Defendants unwillingness to deal with the discrimination and harassment worked to embolden Defendants campaign of hate.

46.     As an example of the way in which Human Resources worked to avoid and subvert Philadelphia Fight's stated anti-discrimination and harassment policies, Defendant, Barry Robinson took over for Terry (last name unknown) as the Director of Human Resources.  Reports of discrimination and harassment made when Terry was the Director of Human Resources were entirely disregarded.   When Defendant, Barry Robinson began as the Director of Human

Resources, he announced a clean-slate policy, whereby any reports of discrimination and harassment made prior to Defendant, Barry Robinson beginning as Director of Human Resources were disregarded. This is indicative of the way in which Defendant Barry Robinson worked to disregard, avoid, and subvert Defendant, Philadelphia Fights stated anti-discrimination and harassment policy. At all times Defendant, Barry Robinson's objective was to assist the very employees accused of discrimination and harassment in avoiding discipline and consequences for their unlawful activities.

47.     Pursuant to reports of discrimination and harassment in the workplace, Defendant, Akia Feggans stated that Defendant, Jane Shull "tells me everything." Plaintiff interpreted this comment for what it was, a threat intending to deter future protected activity in reporting discrimination and harassment in the workplace.

48.     Defendants were aware of the ongoing discriminatory animus towards white, Caucasian employees. Notwithstanding, Defendant, Akia Feggans received another promotion in November 2015. Pursuant to this promotion, Defendant, Akia Feggans assumed the responsibilities that at one time were held by Nancy Roth, Carolyn Zugschwert, and Jennifer Jones. This made Defendant, Akia Feggans the undisputed leader of the Lombard Street office, as Defendant, Akia Feggans answered only to Defendant Jane Shull.

49.     Defendant, Jane Shull worked to avoid, disregard, and subvert Defendant, Philadelphia Fight's stated anti-discrimination and harassment policy. Despite multiple reports of discrimination and harassment in the workplace made to Defendant, Jane Shull, Jane Shull failed to conduct a meaningful investigation. No corrective action was taken and the people accused of unlawful conduct were shielded from discipline or consequence for their actions.

50.     Defendant, Tina Presbery became increasingly hostile toward Carolyn Zugschwert. Prior to Carolyn Zugschwert leaving Philadelphia Fight, Defendant, Tina Presbery stated that Ms.

Zugschwert was not fit for the position of Clinical Supervisor because she is "white and rich with no real-world experience."

51.     Defendant, Akia Feggans openly voiced her discriminatory ideas about Plaintiff, Karin Scheibel's disability related to being a recovering addict.  Defendant, Akia Feggans often made comments such as, "Karin, do you think addiction is really a disease? I'm not sure I buy into that."

52.     In December 2015, Defendant, Akia Feggans repeated her feelings that addiction is not a "real disease."  Defendant, Akia Feggans went on to say, "Well I think that addicts can get clean but that doesn't necessarily mean that they will stop being manipulative."

53.     Defendant also explained her feeling about drug addicts, including people in recovery to Plaintiff, Karin Scheibel, stating, "they lack integrity, that's just their character."

54.     Defendant, Akia Feggans made belittling and degrading comments as to the trustworthiness, manipulativeness and "lack of integrity" of addicts, including people in recovery. These comments were specifically offensive for Plaintiff, Karin Scheibel as a person in recovery.

55.     In December 2015, Defendant, Tina Presbery accused Plaintiff of being high. Plaintiff, Karin Scheibel reported this unfounded accusation to Defendant, Akia Feggans.  In a subsequent meeting held to discuss the inappropriate, discriminatory comment, Defendant, Tina Presbery stated that she was just "concerned" and apologized.  No disciplinary action was taken to deal with the discriminatory remark, which resulted in Plaintiff, Karin Scheibel having to contend with similar accusations during her employment for Defendants in the future.

56.     Pursuant to Defendant, Tina Presbery's discriminatory comment, Plaintiff, Karin Scheibel visited Human Resources and reported that Plaintiff, felt "harassed and discriminated against for being a person in recovery."  No meaningful investigation resulted.  No corrective action was taken.

57.     May 2016 Defendant, Akia Feggans accused Ms. Scheibel of stealing patient transportation tokens.  This is another example of the discrimination to which Ms. Scheibel was subjected due to her status as a recovering addict.

58.     Spring 2016 Defendant, Tina Presbery said to Ms. Scheibel, "never mind what I was about to say, I can't trust your white ass."

59.     April 2017, Defendant Akia Feggans issued Plaintiff an annual review falsely accusing Plaintiff of below-average work product.

60.     April 2017, Defendant, Akia Feggans was speaking about her son and his potential prom date.  Defendant, Akia Feggans stated, "He can't take a girl who would wear something trashy and no offense Karin, but no white girls."

62.     Later that day Defendant, Akia Feggans called Ms. Scheibel into her office and said something to the effect of:  "I'm sorry about my earlier comment, it's not that I don't like white people.  It's just that I worry about my son dating white girls because he's an athlete and he's good and will go far.  I worry because there are a lot of professional athletes who marry white women.  When the athlete seeks divorce or ends the relationship, the white women cry rape."

63.     Defendant, Akia Feggans went on to say, "It is statistically true that white women falsely accuse black athletes of rape more than any other women."

64.     July 26, 2017, Plaintiff, Karin Scheibel experienced symptoms related to her epilepsy during work.  At the same time, Defendant, Akia Feggans wanted to review Ms. Scheibel's charts and paperwork.  Plaintiff explained that she was not feeling well and may need additional time to complete her paperwork.  Despite requesting some time to work through the symptoms related to her epilepsy, Defendants refused to provide the same.  Co-worker Deena Salley stated, "you are going to have to get it done … because [Defendant Akia Feggans] is on the warpath."

65.     Later that day, Co-worker, Kristopher Wuebbling offered to take Ms. Scheibel to the emergency room due to Ms. Scheibel experiencing symptoms related to her epilepsy.  Ms. Scheibel understood what was happening to her, as well as the limitations for treatment options should she visit the emergency room, and therefore declined.  Once again, Ms. Scheibel explained that she only needed some time to work through the onset of symptoms.

66.     Concerned, Allen Howell asked on-site Nurse Practitioner, Julie Fort to assist Ms. Scheibel.  Julie Fort concluded that Ms. Scheibel should visit the emergency room.  Ms. Scheibel followed Julie Fort's suggestion.

67.     About four (4) days later, June 30, 2017 at approximately 3:30 P.M., Defendant, Akia Feggans accused, Plaintiff, Karin Scheibel of being on drugs the day she experienced symptoms related to her epilepsy during work.  Defendant, Akia Feggans informed Plaintiff that Julie Fort had arrived at this conclusion during her assessment of Ms. Scheibel.  At no time was Plaintiff, Karin Scheibel using drugs.   This accusation is another example of Defendants discrimination against Plaintiff based on her status as a recovering addict.

68.     Plaintiff explained that the symptoms she experienced on June 26, 2017 were related to her epilepsy.

69.     Defendant, Akia Feggans replied, "give me a break Karin, we all know what a seizure looks like."

70.     Defendant, Akia Feggans then accused Plaintiff, Karin Scheibel of being "manic," and directed Ms. Scheibel to consider taking mood stabilizers.

71.     Thereafter, Plaintiff learned that Defendant, Akia Feggans was interrogating co-workers and asking them whether they believed Ms. Scheibel had faked a seizer.

72.     Around July 12, 2017 Plaintiff met with Defendant, Barry Robinson and provided discharge papers from her June 21st and June 26, 2017 emergency room visits.  Plaintiff also

provided Defendant, Barry Robinson with a July 11, 2017 doctor's note from a follow-up appointment with her Primary Care Physician.   Plaintiff explained to Defendant, Barry Robinson that she had a history of epileptic seizures and also provided medical records dating back to 2013 to affirm her medical condition.

73.     Plaintiff, Karin Scheibel also informed  Defendant, Barry Robinson in words and in substance that she was concerned about Julie Fort's assessment concluding that Ms. Scheibel was under the influence of drugs on June 26, 2017.

74. Plaintiff, Karin Scheibel explained that this was the second time that an accusation about being on drugs was made, and informed Defendant, Barry Robinson about Defendant, Tina Presbery's previous accusation.  Despite the reports of discriminatory comments and accusations, Defendant, Barry Robinson failed to conduct a investigation.  No corrective action was taken.

75.     Plaintiff took this opportunity to report the ongoing discriminatory comments and conduct of Defendant, Akia Feggans over the last 24 months, including but not limited to Defendant, Akia Feggans assertion that Ms. Scheibel should take a "mood stabilizer," and Defendant, Akia Feggans accusation that Plaintiff, Karin Scheibel was faking the seizer because "we all know what a seizure looks like."   Plaintiff also reported Defendant, Akia Feggans comments that addicts in recovery are manipulative.  Defendant, Barry Robinson assured Plaintiff, Karin Scheibel that he would deal with it.  No investigation was performed.  No corrective action was taken.

76.     At all times Defendants failed to investigate Plaintiff's reports of the discriminatory conduct and hostile work environment and took no corrective action.  As such the harassment and discrimination continued.

77.     Defendant, Barry Robinson failed entirely in his duties as Director of Human Resources.  In lieu of conducting a meaningful investigation into the ongoing and accumulating

reports of discrimination and harassment in the workplace, Defendant, Barry Robinson blamed Ms. Scheibel, the victim of Defendants' hate based discriminatory attacks. Defendant, Barry Robinson informed Ms. Scheibel, "you need to stand up to Akia Feggans. People like her feed off of fear. Do not let her intimidate you. Don't be intimidated. Don't show fear."

78.    Plaintiff, Karin Scheibel later discovered that Defendant, Barry Robinson provided this same advice to other employees who reported Defendants discrimination and harassment in the workplace.

79.    Plaintiff suspected that Defendant Akia Feggans lied about Julie Fort's conclusion that Ms. Scheibel was on drugs the day she experienced symptoms related to her epilepsy. Accordingly, Ms. Scheibel asked Defendant, Akia Feggans if it would be OK to speak with Julie Fort directly. Defendant, Akia Feggans said, "It depends on what you think you will really gain from it. Of course she will deny it. Or worse she could accuse you of attacking her."

80.    Plaintiff, Karin Scheibel was perplexed by Defendant, Akia Feggans bizarre response.

81.    On August 7, 2017 Plaintiff, Karin Scheibel asked Julie Fort whether Ms. Fort believed Ms. Scheibel was on drugs on the day in question. Julie Fort informed Ms. Scheibel that she never said that. Moreover, Julie Fort explained that she did not understand how the toxic environment that existed at Philadelphia Fight was allowed to continue.

82.    On August 16, 2017, Plaintiff approached Defendant, Barry Robinson, to report that Ms. Scheibel had attempted to follow his directions in speaking with Defendant, Akia Feggans directly. Plaintiff explained that Defendant, Akia Feggans did not respond appropriately and that Ms. Scheibel feared further retaliation. Defendant, Barry Robinson directed Ms. Scheibel to go back to Defendant, Akia Feggans and "hold her ground. Don't be intimidated." Ms. Scheibel

explained that she was not comfortable with approaching Defendant, Akia Feggans again. Defendant, Barry Robinson offered no other solution.

83.     During the same conversation Plaintiff informed Defendant, Barry Robinson about her conversation with Julie Fort.  Ms. Scheibel explained that Defendant, Akia Feggans' accusations that Ms. Scheibel was on drugs were entirely unfounded, as Julie Fort never made that conclusion.

84.     Defendant, Barry Robinson informed Ms. Scheibel that she had paid time off and sick days.  Defendant, Barry Robinson said, "maybe you shouldn't come to work if you're not feeling well."  Ms. Scheibel explained that she did not receive advanced notice of an onset of symptoms related to her epilepsy.  There was no way for Plaintiff to predict when she would experience these symptoms.  Therefore, it was entirely unreasonable for Defendant, Barry Robinson to suggest that simply staying home during these times was a reasonable solution.

85.     Plaintiff explained that she did not need to take off of work due to the symptoms she experienced on June 26, 2017.  Plaintiff explained that she just needed time to let the symptoms related to her epilepsy dissipate.  Plaintiff maintained a private office at Philadelphia Fight where she could sit and be alone when she experienced symptoms related to her epilepsy.  Plaintiff requested a reasonable accommodation in that Defendants should allow Plaintiff a small amount of time on the rare instances when Plaintiff experienced symptoms related to her epilepsy during work hours.  Defendants refused to make this accommodation, as Defendant, Barry Robinson directed Ms. Scheibel to refrain from working during these periods.

86.     Plaintiff, Karin Scheibel reiterated her request that Defendants do something to stop the discrimination based on Ms. Scheibel's disabilities.  Ms. Scheibel explained that Julie Fort never said that she was on drugs and that this was yet another false accusations by Defendants.  In response, Defendant, Barry Robinson directed Ms. Scheibel to talk to another supervisor.

Defendant, Barry Robinson failed entirely in his role as Director of Human Resources. Defendant, Barry Robinson failed to take and corrective action. The discrimination, harassment, and retaliation continued.

87.     On or about August 30th, 2017 Ms. Scheibel presented to her neurologist for a follow-up appointment subsequent to her emergency room visit on or about June 21, 2017. Ms. Scheibel underwent an EEG which confirmed her earlier diagnosis of Left Temporal Lobe Epilepsy. Ms. Scheibel was placed back on seizure medication.

88.     On or about September 6, 2017, Ms. Scheibel met with her Clinical Supervisor Defendant Jennifer Jones as per Defendant, Barry Robinson's suggestion. During her meeting with Defendant, Jennifer Jones, Ms. Scheibel once again reported Defendant Akia Feggans and Defendant Tina Presbery's discriminatory comments and conduct and the hostile work environment that resulted. Ms. Scheibel explained her fear of losing her job because she could not control when and where her seizures occurred and that the prospect of being falsely accused of being on drugs.

89.     Defendant, Jennifer Jones directed Ms. Scheibel to utilize her time off and told Ms. Scheibel that she was wrong to come to work on June 26, 2017, the day Ms. Scheibel had her seizure at work. At no time did Defendant, Jennifer Jones engage Ms. Scheibel in an interactive process to discuss reasonable accommodations. Defendant, Jennifer Jones further admonished Ms. Scheibel for having symptoms related to her disability during work hours.

90.     Defendant Jennifer Jones further directed Ms. Scheibel to "leave the premises" whenever she experienced symptoms related to her disability. By no means was Defendant, Jennifer Jones's suggestion a reasonable accommodation. Instead, Defendant, Jennifer Jones was suggesting that Ms. Scheibel should hide her disability and its effects from her employer, as if it were something to be ashamed of.

91.     Ms. Scheibel requested that Defendants accommodate her by giving her time in the event of a Petite Mal-Seizer and conceded that in the event of a Grand Mal-Seizure, Defendants could call an ambulance if Defendants felt that was necessary for safety reasons.  Defendants refused to even consider this reasonable solution.  At all times Defendants failed to participate in an interactive process with Ms. Scheibel regarding he request for reasonable accommodations.

92.     Around October 4, 2017, Ms. Scheibel approached Julie Fort and asked whether she met with Defendant, Barry Robinson.  Julie Fort informed Ms. Scheibel that the meeting with Defendant, Barry Robinson went "very well."  Julie Fort informed Ms. Scheibel  that she need not be concerned about the accusations that Ms. Scheibel was "under the influence" on June 26, 2017. Julie Fort also expressed anger at being "dragged into the situation."  Julie Fort stated she felt the "whole thing was inappropriate."

93.     Around October 17, 2017, during a bi-weekly Staff Meeting, Defendant, Akia Feggans stated, "If anyone is not happy here I suggest you leave, if you don't like it here you're either going to leave on your own or you'll be gone either way. No one is bigger than me.  Go upstairs to HR if you want, nothing is a secret around here."  These comments were part of Defendants retaliation against Ms. Scheibel for reporting discrimination and harassment in the workplace.

94.     Ms. Scheibel reported Defendant, Akai Feggans' retaliatory comments.  Ms. Scheibel  also provided a written statement about the same.  Ms. Scheibel feared increased retaliation and expressed these concerns to Defendant, Barry Robinson.  Defendant, Barry Robinson assured Ms. Scheibel that he "would not go any further with it" without Ms. Scheibel's consent."  Ms. Scheibel also reported to Defendant, Barry Robinson the discriminatory color and race-based comments made by Defendants, Akia Feggans and Tina Presbery.  Ms. Scheibel included this in her written statement.

95.    During a subsequent staff meeting, Defendant, Tina Presbery reiterated Defendants' discriminatory feelings about Ms. Scheibel related to her disabilities.  Defendant, Tina Presbery stated, "The way you were running around with your medical records to try to prove that you were not using drugs, just made me think that you must have been using drugs, you wouldn't have been so defensive otherwise."

96.    Defendant, Akia Feggans informed Ms. Scheibel that she should have been fired for approaching Julie Fort concerning her assessment that Ms. Scheibel  was using drugs.

97.    In concluding the meeting, Defendant, Akia Feggans reiterated her threatening retaliatory comments, "Don't go upstairs to HR.  I have nothing to hide and you should think twice before going up there because they are not as nice as you all think they are up there."

98.    Around November 6, 2017, Defendant, Akia Feggans forwarded Ms. Scheibel and her co-workers Kristopher Wuebling an email and copied Defendant, Barry Robinson.  Defendant, Akia Feggans' email stated that she was aware they had reported her to Human Resources and expressed grievances related to Defendant, Akia Feggans' conduct and comments.

99.    Defendant, Akia Feggans went on to write that they needed to discuss "Proper Protocol" for making grievances.  Defendant, Akia Feggans failed to grasp that her campaign of hate, abuse, harassment, discrimination and retaliation was the subject matter of Ms. Scheibel and her co-workers reports.

100.    It was apparent that Defendant, Barry Robinson failed to keep his promise of maintaining confidentiality with regard to Ms. Scheibel and her co-workers' reports of discrimination and retaliation in the workplace.  When Ms. Scheibel approached Defendant, Barry Robinson about Defendant, Akia Feggans email, Defendant, Barry Robinson stated that he was under the impression that the issues had been settled and that he had taken care of it by not responding to Defendant, Akia Feggans email.

101.    Thereafter, Defendant, Barry Robinson informed Ms. Scheibel that he wanted to have a meeting to discuss the race issues and directed Ms. Scheibel not to fall for Defendant, Akia Feggans intimidation tactics.

102.    During a subsequent meeting in Defendant, Akia Feggans office, Defendant, Akia Feggans accused Ms. Scheibel of having a history of confrontational behavior.  Defendant, Akia Feggans went on to admonish and insult Ms. Scheibel based on a completely inaccurate account of Ms. Scheibel's work history.  Based on the history of discrimination, abuse, harassment, and retaliation, Ms. Scheibel informed Defendant, Akia Feggans that she had reached her emotional limit and that she wanted to quit.  Defendant, Akia Feggans said, "good.  Pack your office and leave."

103.    Ms. Scheibel approached Defendant, Barry Robinson a short while later and informed Defendant, Barry Robinson about the exchange, specifically that Defendant, Akia Feggans had just asked Ms. Scheibel to pack her stuff and leave.  Ms. Scheibel explained to Defendant, Barry Robinson that it was Ms. Scheibel's true desire to find a way to resolve the issues related to Ms. Scheibel's request for reasonable accommodations, and the discrimination and harassment, leading to the hostile work environment.

104.    Defendant, Barry Robinson informed Ms. Scheibel, "we told you not to come to work if you thought you  were going to have a seizer and that you should leave if you are having one." Defendant, Barry Robinson went on to say, "well, I don't know what else we can do for you Karin."

105.    Ms. Scheibel explained to Defendant, Barry Robinson that she was treating for her seizers and had just begun a knew regiment of medication that was supposed to reduce the symptoms related to her disability.

106.    Defendant, Barry Robinson was disinterested, and stated that it was a moot point now that Ms. Scheibel had decided to quit.

107.    On November 20, 2017, Plaintiff, Karin Scheibel was unlawfully terminated from her employment as a result of race and color discrimination, discrimination based on Plaintiff's disabilities and in retaliation for Plaintiff reporting Defendants unlawful conduct.

108.    Plaintiff further pleads in the alternative that on November 20, 2017, Defendants constructively discharged Plaintiff by making her work conditions so onerous, abusive, and intolerable that no person in Plaintiff's shoes would have been expected to continue working under such condition and such that Plaintiff's resignation was void of free will.

109.    At no time did Defendants actually believe that Ms. Scheibel was actually taking illicit drugs.  At no time did Defendants ask Ms. Scheibel to take a drug test to confirm that Ms. Scheibel was still in recovery.  Instead, Defendants allowed Ms. Scheibel to continue treating patients and clients of Philadelphia Fight.  Defendants accusations that Ms. Scheibel was using drugs was nothing more than discrimination based on Plaintiff's disability and in retaliation for reporting the same.

110.    Despite numerous reports of discrimination, harassment, and retaliation, by multiple employees including Plaintiff, Defendants failed to conduct a meaningful investigation.  Defendants failed to take corrective action.  Defendants, Akia Feggans and Tina Presbery experienced no meaningful discipline and still works for the Philadelphia Fight today.

111.    On October 25, 2016, in response to reports of racial tension and discrimination within Philadelphia's Lesbian, Gay, Bisexual, Transgender, Queer/Questioning (LGBTQ) population, the Philadelphia Commission on Human Relations (PCHR) held a public hearing. Based on the hearing, the PCHR is issuing this Report on Racism and Discrimination in Philadelphia's LGBTQ Community to present its findings and offer recommendations. The

PCHR's goal is to ensure focused, actionable steps are taken to bring resolutions to the problems

LGBTQ community members raised.  This PCHR found the same with regard to Defendant,

Philadelphia Fight:

> Overwhelmingly, the testimony revealed incidents of bias, feelings of frustration, prejudice, and discrimination in places of public accommodation in the Gayborhood and in places of employment at the Mazzoni Center and Philadelphia FIGHT.
> …
>
> Review of the employee handbooks and employee policies of the Mazzoni Center and Philadelphia FIGHT reveal they are inadequate or not properly implemented and leave employees vulnerable to discriminatory practices.
> …
>
> Employees who speak out about experiences with discrimination and mistreatment feel too intimidated to report their experiences or fear retaliation for reporting.
> …
>
> Philadelphia FIGHT has a general handbook and/or employee policies to protect diverse employees, but does not have language specifically addressing racial and LGBTQ discrimination. While FIGHT does have detailed procedures for reporting incidents of harassment and violence, it does not specifically address the different types of possible misconduct and discrimination which may be considered harassment.

Based on the findings of the PCHR related to Philadelphia FIGHT, along with the clear futility

and retaliation which results to Defendants' employees who report discrimination and retaliation

in the workplace, Defendants should be held to a strict liability standard.

112.    Pursuant to Plaintiff's unlawful termination from her employment for Defendants,

Defendant, Akia Feggans stated that she only wanted to hire black people in the future.  Defendant,

Akia went on to explain that she felt it was culturally inappropriate to have a white person in Ms.

Scheibel's position.

113.    Pursuant to Plaintiff's unlawful termination, Defendant, Akia Feggans also

expressed her disappointment in learning that having recovering addicts as therapists was

preferable to the Commonwealth of Pennsylvania.  Defendant, Akia Feggans made it clear that she did not want to work with recovering addicts, despite the fact that the Commonwealth believes having recovering addicts as therapists is an important component of the therapeutic process.

114.    As a result of Defendants' conduct Plaintiff has been extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.  As a result of Defendants' conduct Plaintiff  was subjected to discriminatory treatment and retaliation, and continues to suffer severe emotional distress and physical ailments.

115.    As a result of Defendants' conduct Plaintiff has been subjected to discriminatory and retaliatory conduct, and suffers from regular anxiety attacks.  Plaintiff has difficulty sleeping and eating.

116.    Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, and Plaintiff demands Punitive Damages against all Defendants jointly and severally.

117.    Defendants have established a pattern and practice of discrimination, retaliation, and harassment through their actions.   The discrimination and retaliation will continue beyond the date of this complaint, and as such, Plaintiff makes a claim for all continuing future harassment and retaliation.

118.    The above are just some of the examples of unlawful and discrimination and retaliation to which Plaintiff was subjected.

119.    Defendants constructively discharged Plaintiff by making her working conditions so onerous, abusive, and intolerable that no person in Plaintiff's shoes would have been expected to continue working under such conditions and such that Plaintiff's resignation was void of free will.

120.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

121.    Plaintiff suffers from anxiety, fear, and nightmares relating to Defendants and Defendants' employees conduct.  Plaintiff is unable to sleep or eat.

122.    As a result of Defendants' conduct, Plaintiff has been humiliated, degraded, victimized, embarrassed and emotionally distressed.

123.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, a loss of salary, bonuses, benefits and other compensation, which such employment entails.  Plaintiff has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress.

124.    Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

125.    The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

126.    Plaintiff claims that Defendants discriminated against Plaintiff because of Plaintiff's race, color and disability and because Plaintiff complained and opposed the unlawful conduct of Defendants related to Plaintiff's protected class.

127.    Plaintiff further claims aggravation, activation, and exacerbation of any pre-existing condition.

128.    Plaintiff claims unlawful constructive discharge and/or unlawful actual discharge and also seeks reinstatement.

## FIRST CAUSE OF ACTION
## UNDER FEDERAL LAW
### S.C. SECTION 1981
### (against all named Defendants)

129.    Plaintiff, Nwenna Gates, hereby incorporates all allegations contained in paragraphs

one (1) through one-hundred-twenty-eight (128) as fully as if they were set forth at length.

130.    42 USC Section 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

131.    Plaintiff, as a member of the white, Caucasian race, was discriminated against by

Defendants because of her race as provided under 42 USC Section 1981 and has suffered damages

as set forth herein.

132.    Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for her opposition

to Defendants' unlawful employment practices.


## SECOND CAUSE OF ACTION
### DISCRIMINATION UNDER TITLE VII
### (against corporate Defendants only)

133.    Plaintiff, Karin Scheibel, hereby incorporates all allegations contained in

paragraphs one (1) through one-hundred-thirty-two (132) as fully as if they were set forth at length.

134.    This claim is authorized and instituted pursuant to the provisions of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon

the unlawful employment practices of the above-named Defendants. Plaintiff complains of

Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

    135.    SEC. 2000e-2. *[Section 703]* states as follows:

> (a) Employer practices
> It shall be an unlawful employment practice for an employer -
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

    136.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her race and color.

### THIRD CAUSE OF ACTION
### <u>RETALIATION UNDER TITLE VII</u>
### (against corporate Defendants only)

    137.    Plaintiff, Karin Scheibel, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-thirty-six (136) as fully as if they were set forth at length.

    138.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

    139.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of her employment because of her opposition to and reporting of the unlawful employment practices of Defendants.

## FOURTH CAUSE OF ACTION
## DISCRIMINATION UNDER STATE LAW
### (against all named Defendants)

140.    Plaintiff, Karin Scheibel, hereby incorporates all allegations contained in

paragraphs one (1) through one-hundred-and-thirty-nine (139) as fully as if they were set forth at

length.

141.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

> "(a) For any employer because of the race, color, religious creed, ancestry,
> age, sex, national origin or non-job related handicap or disability or the use
> of a guide or support animal because of the blindness, deafness or physical
> handicap of any individual or independent contractor, to refuse to hire or
> employ or contract with, or to bar or to discharge from employment such
> individual or independent contractor, or to otherwise discriminate against
> such individual or independent contractor with respect to compensation,
> hire, tenure, terms, conditions or privileges of employment or contract, if
> the individual or independent contractor is the best able and most competent
> to perform the services required."

142.    Defendants engaged in an unlawful discriminatory practice by discriminating

against the Plaintiff because of Plaintiff's disability, race and color.

143.    Plaintiff hereby makes a claim against Defendants under all of the applicable

paragraphs of the PHRA § 955.


## FIFTH CAUSE OF ACTION
## RETALIATION UNDER STATE LAW
### (against corporate Defendants only)

144.    Plaintiff, Karin Scheibel, hereby incorporates all allegations contained in

paragraphs one (1) through one-hundred-and-forty-three (143) as fully as if they were set forth at

length.

145.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For

any person, employer, employment agency or labor organization to discriminate in any manner

against any individual because such individual has opposed any practice forbidden by this act, or

because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

146.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## SIXTH CAUSE OF ACTION
## DISCRIMINATION UNDER STATE LAW
### (against all named Defendants)

147.    Plaintiff, Karin Scheibel, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-and-forty-six (146) as fully as if they were set forth at length.

148.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

149.    Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## SEVENTH CAUSE OF ACTION
## DISCRIMINATION UNDER
## PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
### (against all named Defendants)

150.    Plaintiff, Karin Scheibel, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-and-forty-nine (149) as fully as if they were set forth at length.

151.    The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice:  "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

152.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's disability, race and color.

153.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

## EIGHTH CAUSE OF ACTION
## RETALIATION UNDER THE
## PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
### (against all named Defendants)

154.    Plaintiff, Karin Scheibel, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-and-fifty-three (153) as fully as if they were set forth at length.

155.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

156.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## NINTH CAUSE OF ACTION
## DISCRIMINATION UNDER
## PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
### (against all named Defendants)

157.    Plaintiff, Karin Scheibel, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-and-fifty-six (156) as fully as if they were set forth at length.

158.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from

complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

159.     Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.


## TENTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (against corporate Defendants only)

160.     Plaintiff, Karin Scheibel, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-and-fifty-nine (159) as fully as if they were set forth at length.

161.     Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

162.     Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

163.     Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability association.  As such, Plaintiff has been damaged as set forth herein.

## ELEVENTH CAUSE OF ACTION
## RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (against corporate Defendants only)

164.    Plaintiff, Karin Scheibel, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-and-sixty-three (163) as fully as if they were set forth at length.

165.    Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

166.    Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter IV, Section 12203, Discrimination [Section 102] states:

   a. "(a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
   b. (b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

167.    Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff because of his disability association.

168.    As such, Plaintiff has been damaged as set forth herein.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.


DEREK SMITH LAW GROUP,  PLLC

By: _____
Seth D. Carson, Esquire
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: seth@dereksmithlaw.com


DATED: November 7, 2018